UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

SUMMIT STREET DEVELOPMENT
COMPANY, LLC

Chapter 11
Case No. 12-02865
Hon. James D. Gregg

Debtor.
_____/

## FIRST DAY MOTION FOR INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND SETTING FINAL HEARING DATE

NOW COMES the Debtor in the above-captioned matter (the "Debtor"), by and through its counsel, Lambert, Leser, Isackson, Cook & Giunta, P.C., and for its First Day Motion for Order Authorizing Use of Cash Collateral and Setting Final Hearing Date (the "Motion"), hereby states as follows:

### CONCISE STATEMENT OF RELIEF REQUESTED PURSUANT TO FED. R. BANKR. P. 4001(b)(1)(B)

1. The Debtor requires use of Cash Collateral, as defined below, in order to pay operating expenses and to pay vendors to ensure a continued supply of goods and services essential to the Debtor's continued operations and viability.

2. Absent the authority to use Cash Collateral, the Debtor will be unable to operate its business and the value of the estate will be severely degraded. The Debtor could be forced to immediately and abruptly liquidate to the direct detriment of all parties in interest.

3. Upon information and belief, the only other party who expresses a secured interest in the Cash Collateral is First Financial Bank, N.A., 300 High Street, Hamilton, Ohio 45011 (the "Secured Party").

4. In short summary, the Order requested by the Debtor in this Motion provides as follows:

a.  <u>Use of Cash Collateral</u>. The Debtor shall continue to use cash collateral in the normal course of its business operations until the Effective Date of an order confirming a plan of reorganization for the Debtor or until other order of the Court in accordance with the Budget attached to this Motion as Exhibit 2.

b.  <u>Adequate Protection</u>. The Secured Party, should its asserted liens be found valid, shall receive adequate protection for the Debtor's continued use of cash collateral as follows:

1)  The Debtor shall keep all of the Secured Party's collateral fully insured.

2)  The Debtor will deposit all cash acquired post-petition into the DIP account.

3)  The Secured Party is clearly oversecured and thus is provided adequate protection by the virtue of its substantial equity cushion. The Debtor believes the value of its real property to be approximately $8 million, while the current debt obligation to the Secured Party is approximately $5.3 million.

## JURISDICTION

5. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

6. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

7. Venue of this proceeding and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

8. The statutory predicates for the relief requested in this Motion are 11 U.S.C. §§ 105, 363, 522; Fed. R. Bankr. P. 4001 and Bankr. W.D. Mich. L.R. 4001-2..

## BACKGROUND

9. On March 27, 2012 (the "Petition Date"), the Debtor commenced with this Court a voluntary case under Chapter 11 of the Bankruptcy Code. The Debtor is authorized to continue to operate its business and manage its property as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

10. No request for appointment of a Chapter 11 trustee or examiner has been made and, as of the date hereof, no official committee has been appointed.

11. It is believed that the Secured Party will assert a secured lien against certain assets of the Debtor.

12. The Secured Party is the Debtor's primary creditor and, upon information and belief, has asserted, or may assert a lien in the Debtor's deposit accounts and accounts receivable, including the rents generated from the Debtor's tenants.

13. The Debtor is working to consensually negotiate the use of Cash Collateral with the Secured Party. However, should those negotiations be unsuccessful, the Secured Party may oppose the Debtor's use of Cash Collateral. For that reason, the Debtor believes it is necessary to bring this Motion so that in the event stipulated use of cash collateral cannot be reached, there will be the shortest possible interruption to the Debtor's operations while the Court reviews this matter.

## APPLICABLE LAW AND ARGUMENT

14. The Debtor believes that the Secured Party will argue that the postpetition rents generated by the Debtor's tenants are collateral of the Secured Party pursuant to an

Assignment of Rents and Leases (the "Assignment of Rents") between the Debtor and Secured Party, dated July 11, 2001.

15. For the purposes of this Motion, the Debtor agrees that the Secured Party has a lien on the postpetition rents and other cash collateral of the Debtor.

16. As is relevant to this commercial real estate case, section 552 states that "[e]xcept as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is no subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." 11 U.S.C. § 552(a).

17. Section 552(b)(2), provides that:

> Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, and notwithstanding section 546(b) of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to amounts paid as rents of such property or the fees, charges, accounts, or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties, then such security interest extends to such rents and such fees, charges, accounts, or other payments acquired by the estate after the commencement of the case to the extent provided in such security agreement, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

18. Thus, under Section 552(b)(2), the Debtor agrees, for purposes of this Motion, that the Secured Party's prepetition Assignment of Rents attaches to the postpetition rents. However, the Debtor believes it is entitled to use those postpetition rents for the regular and ordinary maintenance and operation of the property either through application of the "equities of the case" doctrine found in section 552(b)(2) or by the

{00134924}4

Debtor's provision of adequate protection to the Secured Party as required under section 363.

19. As to the "equities of the case" doctrine contained in section 552(B)(2), the court in *In re Vanas,* 50 B.R. 988, 997 (E.D. Mich. 1985) stated that this should be a case by case determination, as part of which the court "evaluates the expenditures of time, labor, and funds relative to the collateral, the relative position of the secured party, and the overall rehabilitative theme of bankruptcy law."

20. Pursuant to the Budget attached to this Motion as Exhibit 2, the Debtor is only seeking to use postpetition rents for maintenance, upkeep, and operation of the real property, not to pay non-ordinary expenses such as the Debtor's bankruptcy professional fees.

21. The Debtor further notes that should the Debtor's real property be transferred to the Secured Party, the unsecured creditors of this case will receive no return from this proceeding.

22. As to the provision of adequate protection in general, the Bankruptcy Code provides that a debtor in possession may not use, sell or lease cash collateral unless:

> (A) Each entity that has an interest in such cash collateral consents, or
>
> (B) The court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

23. As of the date of filing this Motion, the Secured Creditor has not consented to the Debtor's use of Cash Collateral and therefore, pursuant to Section 363(c)(2)(B) a hearing on this matter is necessary.

24. As noted by Norton, "courts are given broad discretion to balance the protection of secured creditors, on the one hand, against the strong public policies favoring continuation of jobs, preservation of going concern values, and rehabilitation of distressed debtors, generally." 2 Norton Bankr. L. & Prac. 3d § 44:5, *citing* H.R. Rep. 834, 103rd Cong., 2nd Sess. 27 to 29 (Oct. 4, 1994); 140 Cong. Rec. H10768 (Oct. 4, 1994). Thus the courts are, in their equitable discretion, permitted to alter the rights of secured creditors after the provision of adequate notice and hearing. 11 U.S.C. § 552(b); *In re Q-C Circuits Corp.*, 231 B.R. 506 (E.D. N.Y. 1999).

25. Reiterating what was stated above, prohibiting the Debtor from the use of Cash Collateral would lead to the immediate cessation of operations at its facility and the consequential diminution in value of the Debtor's estate through the inevitable loss of business that would follow.

26. Section 363(e) of the Bankruptcy Code further provides, in pertinent part, that "on request of an entity that has an interest in property . . . proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest . . ."

27. The Bankruptcy Code does not explicitly define "adequate protection," but does provide a nonexclusive list of the means by which a debtor-in-possession may provide adequate protection, including (i) periodic cash payments, (ii) additional or replacement liens, or (iii) other relief resulting in the "indubitable equivalent" of the secured creditor's interest in such property. 11 U.S.C. § 361.

28. What constitutes adequate protection must, therefore, be decided on a case-by-case basis. *See, e.g., In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); *see also, In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985). The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in that particular collateral during the period of use. *See In re 494 Central Park Avenue Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); *In re Beker Indus. Corp.*, 58 B.R. at 736; *In re Hubbard Power & Light,* 202 B.R. 680 (Bankr. E.D.N.Y. 1996).

29. As adequate protection, the Debtor proposes the following:
    a. The Debtor shall keep all of the Secured Party's collateral fully insured.
    b. The Debtor will deposit all cash acquired post-petition into the DIP account.
    c. Further, the Debtor estimates the value of the property securing the Secured Party's alleged claims far in excess of the value of any secured claim that could be alleged by the Secured Party. The Debtor believes the equity cushion provided therein is further evidence of the Secured Party's adequate protection.

30. Finally, the current rents generated by the Debtor's real property are sufficient to make interest payments to the Secured Creditor and to pay ongoing operational expenses. In addition, there is substantial free space available for rent in the Debtor's real property for which the Debtor has received indications of interest from several well-qualified parties.

31. A budget for the use of Cash Collateral is attached to this Motion as Exhibit 2.

## NOTICE

32. No trustee or examiner has been appointed in these Chapter 11 cases. Notice of this Motion will be given pursuant to the requirements of L.B.R. 4001-2. The Debtor submits that no other or further notice need be provided.

## NO PRIOR REQUEST

33. No prior request for the relief sought in this Motion has been made to this or any other court in connection with this Chapter 11 case.

WHEREFORE, the Debtor respectfully requests that the Court (i) enter an order substantially in the form attached hereto as Exhibit 1, granting the relief requested herein; and (ii) grant such other and further relief to the Debtor as the Court may deem proper.

LAMBERT, LESER, ISACKSON, COOK & GIUNTA, P.C.

Dated: March 29, 2012        BY:   /s/ Rozanne M. Giunta
_____
ROZANNE M. GIUNTA (P29969)
SUSAN M. COOK (P31514)
ADAM D. BRUSKI (P70030)
Proposed Counsel for Debtor
916 Washington Ave., Ste. 309
Bay City, MI 48708
Phone: (989) 893-3518
rgiunta@lambertleser.com

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF MICHIGAN**

In re:

SUMMIT STREET DEVELOPMENT
COMPANY, LLC

Debtor.
_____/

Chapter 11
Case No. 12-02865
Hon. James D. Gregg

**INTERIM ORDER AUTHORIZING USE OF CASH**
**COLLATERAL AND SETTING FINAL HEARING DATE**

The Debtor in the above-captioned case, having filed a First Day Motion for Order Authorizing Use of Cash Collateral and Setting Final Hearing Date (the "Motion"); the Court having conducted a hearing and ruled on this matter;

**THE COURT FINDS AS FOLLOWS:**

A. On March 27, 2012 (the "Petition Date"), the Debtor filed a petition under Chapter 11 of the Bankruptcy Code ("Code"). Since the Petition Date, the Debtor has remained in possession of its assets and continues to operate and manage its business as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

B. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(M).

C. No committee of creditors holding unsecured claims or any other committee has been appointed for the Debtor as provided by § 1102 of the Code.

D. All of the Debtor's property which constitutes cash collateral pursuant to the Bankruptcy Code will continue to constitute cash collateral of the Secured Party ("Cash Collateral"), and must be segregated and accounted for, pursuant to § 363(c)(4) of the Code.

E. To continue the operation of its business, the Debtor represented to the Court that it must use Cash to pay its continuing obligations incurred in the ordinary course of its business. The Debtor agrees to use only that amount of Cash Collateral as is necessary to pay the necessary expenses of its business to avoid immediate and irreparable harm to the estate, and for the costs of administration of its estate pursuant to this Order.

F. The Debtor may use postpetition rents collected in order to fund the ordinary maintenance and operational costs of the Debtor's real property in accordance with the Budget attached to the Motion as Exhibit 2.

G. The Debtor has provided notice of this Motion to all creditors allegedly holding secured claims of record, all other entities known or discoverable after reasonable investigation by the Debtor who claim an interest in Cash Collateral, the creditors included on the list filed pursuant to Bankruptcy Rule 1007(d) and the United States Trustee as set forth in the proof of service filed herein, and such notice, constitutes sufficient "notice and hearing," without the need for notification of any further entities under 11 U.S.C. § 363, 11 U.S.C. § 102, and Bankruptcy Rules 2002, 4001 and 6007.

H. Good cause has been shown for entry of this Order, among other things, the entry of this Order will minimize disruption of the business of the Debtor as a going concern and preserve the value of the Estate.

I. This Order may be entered without further notice and this Court expressly finds that the motion was sufficient to afford reasonable notice of the material provisions of the terms of this Order and an opportunity for hearing.

J. This order is entered on an interim basis and will become a final order automatically unless objections are received within 14 days of the date of this order. Should any objections be filed, the Court will conduct a hearing on _____ __, 2012 at __:__ a.m./p.m.

**ACCORDINGLY, IT IS HEREBY ORDERED AS FOLLOWS:**

(1) The Debtor may use its Cash Collateral pursuant to the terms of this Order until the Expiration Date (as defined herein) only for payment of expenses of the Debtor and for payment of all fees due to the Office of the United States Trustee. The Debtor shall not use Cash Collateral to pay or cure any pre-petition obligations of the Debtor including any arrearages under any lease, equipment or executory contract obligation without the written consent of the Secured Party or pursuant to order of the Court. Any funds not expended by the Debtor shall remain in the DIP account of the Debtor.

(2) The Expiration Date shall be the date of entry of any further or amending order of the Court regarding the use of Cash Collateral

(3) All funds received by the Debtor shall be deposited in the debtor-in-possession account of the Debtor ("DIP Account").

(4) The Debtor will keep all of the Secured Party's collateral insured against loss or damage resulting from fire, flood or other hazards, casualties and contingencies.

(5)  The Debtor is authorized to use Cash Collateral, subject to the terms and conditions set forth herein, until the Expiration Date. Notwithstanding anything in this Order approving same to the contrary, this Order and its respective Expiration Date may be extended upon the consent of the Debtor and Secured Party, or the entry of an order of this Court after notice and hearing upon the same or different terms.

(6)  The Debtor is authorized to use Cash Collateral in accordance with the budget attached to the Motion as Exhibit 2.

## Budget Summary
### Summit Street Development

| Rental Income | Monthly (2012) | Annual (2012) | 7 Month (2012) | Annual (2011) |
|---|---|---|---|---|
| C2AE (Lease Expires 04/31/13) | $ 21,985.35 | $ 263,824.20 | $ 153,897.45 | $ 263,825.40 |
| City of Lansing (Expires 8/31/14) | $ 28,715.03 | $ 344,580.36 | $ 201,005.21 | $ 338,977.40 |
| Total | $ 50,700.38 | $ 608,404.56 | $ 354,902.66 | $ 602,802.80 |
| | | | | |
| **Expenses** | | | | |
| Property Management | $ 2,535.02 | $ 30,420.23 | $ 17,745.13 | $ 30,175.40 |
| Interest Payment to First Financial | $ 19,642.20 | $ 235,706.40 | $ 137,495.40 | $ 235,706.40 |
| Maint & Repairs / Labor | $ 891.38 | $ 10,696.55 | $ 6,239.65 | $ 10,187.19 |
| Grounds Maint/Lawncare | $ 977.16 | $ 11,725.86 | $ 6,840.09 | $ 11,167.49 |
| Landscaping | $ 167.86 | $ 1,233.76 | $ 1,175.01 | $ 1,175.01 |
| Cleaning | $ 48.74 | $ 584.90 | $ 341.19 | $ 557.05 |
| Plumbing | $ 141.27 | $ 1,695.28 | $ 988.91 | $ 1,614.55 |
| Bldg Supplies | $ 76.57 | $ 918.78 | $ 535.96 | $ 875.03 |
| Electricity | $ 1,404.34 | $ 16,852.11 | $ 9,830.40 | $ 16,049.63 |
| Water & Sewer | $ 598.58 | $ 7,182.90 | $ 4,190.03 | $ 6,840.86 |
| Trash Collection | $ 88.68 | $ 1,064.18 | $ 620.77 | $ 1,013.50 |
| Gas | $ 465.01 | $ 5,580.15 | $ 3,255.09 | $ 5,314.43 |
| Real Estate Tax | $ 13,142.86 | $ 117,000.00 | $ 92,000.00 | $ 116,688.41 |
| Fees & Permits | $ 23.94 | $ 287.33 | $ 167.61 | $ 273.65 |
| Insurance | $ 1,092.11 | $ 10,191.55 | $ 7,644.77 | $ 9,706.24 |
| Inspection Fees | $ 21.88 | $ 262.50 | $ 153.13 | $ 250.00 |
| Accounting | $ 336.98 | $ 4,043.72 | $ 2,358.84 | $ 3,851.16 |
| Leasing Agent | $ 450.05 | $ 5,400.58 | $ 3,150.34 | $ 5,143.41 |
| HVAC Maint/Repairs | $ 1,171.43 | $ 10,099.71 | $ 8,200.00 | $ 9,618.77 |
| Snow Removal | $ 397.35 | $ 2,781.43 | $ 2,781.43 | $ 2,648.98 |
| Pest Control | $ 55.65 | $ 667.80 | $ 389.55 | $ 636.00 |
| Roof Maintenance | $ 1,008.51 | $ 7,059.59 | $ 7,059.59 | $ 6,723.42 |
| Parking Lot Lights | $ 1,459.63 | $ 17,515.54 | $ 10,217.40 | $ 16,681.47 |
| Parking Lot Maintenance | $ 798.21 | $ 5,587.50 | $ 5,587.50 | $ 5,321.43 |
| Tenant Improvement | | | | $ 40,000.00 |
| | | | | |
| **Total Expenses** | $ 46,995.40 | $ 504,558.36 | $ 328,967.78 | $ 538,219.48 |
| | | | | |
| **Balance** | $ 3,704.98 | $ 103,846.20 | $ 25,934.88 | $ 64,583.32 |